# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

_____

Court File No.:

Gary Scherer,

       Plaintiff,

    v.                                    **COMPLAINT**

Chatham Bloomington HS LLC
d/b/a Homewood Suites by Hilton
Minneapolis-Mall of America,

       Defendant.

_____

Plaintiff, by and through the undersigned counsel, brings this action against Chatham Bloomington HS LLC d/b/a Homewood Suites by Hilton Minneapolis-Mall of America for violations of the Americans With Disabilities Act, 42 U.S.C. § 12181, *et seq.* (the "ADA") and its implementing regulations, and allege as follows:

## **INTRODUCTION**

1.    For over 30 years, the Americans with Disabilities Act ("ADA") has required that individuals with disabilities be provided full and equal access to the goods, services and facilities provided by hotel owners and operators.

2.    This mandate requires hotel businesses to provide patrons with accommodations that are readily accessible to individuals with disabilities.

3.      According to the 2019 J.D. Power North America Hotel Guest Satisfaction Index Study, the quality of sleep is the top variable determining guest satisfaction during a hotel stay.[1]

4.      However, many hotel operators, including Defendant, do not offer beds in their accessible rooms that are independently usable by hotel patrons with mobility disabilities. This is a fundamental violation of the general accessibility mandate of the ADA:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

5.      Defendant owns, manages, and/or operates the Homewood Suites by Hilton Minneapolis-Mall of America located at 2261 Killebrew Drive, Bloomington, MN (the "Facility").

6.      In failing to provide accessible guest rooms, Defendant has engaged in illegal discrimination, excluded, and deterred individuals with disabilities from patronizing Defendant's hotel, and denied individuals with disabilities full and equal access to the goods, services, facilities, privileges, advantages, and accommodations that Defendant offers to the public.

---

[1] Available at https://www.jdpower.com/business/press-releases/2019-north-america-hotel-guestsatisfaction-index-nagsi-study (Last accessed July 18, 2023).

7.      Defendant's discrimination violated and continues to violate Title III of the ADA, and unless Defendant is required to change its policies, practices, and procedures so that Defendant's goods, services, facilities, privileges, advantages, and accommodations are accessible to individuals with disabilities, Plaintiff will continue to be denied full and equal access to Defendant's hotel and will be deterred from using Defendant's hotel.

8.      In accordance with *Steger v. Franco, Inc.,* 228 F.3d 889 (8th Cir. 2000), and 42 U.S.C. § 12188(a)(2), Plaintiff asserts and seeks injunctive relief as to all unlawful barriers at the Facility that are related to Plaintiff's disability including, but not necessarily limited to, an injunction requiring that:

a)      Defendant offers the required number of accessible rooms at the Facility, consistent with the ADA's general non-discriminatory mandate and its implementing regulations including room dispersal requirements;

b)      Defendant becomes compliant with the ADA as to any and all unlawful barriers at the Facility that are related to Plaintiff's disability, including but not necessarily limited to, any barriers present in any of the following areas: parking and loading zones, exterior routes, building entrances and lobbies, registration counters, interior routes, public/common use restrooms, food service areas, and pool areas; and that

c)      Defendant changes its policies, practices, and procedures necessary to afford all offered goods, services, facilities, privileges, advantages and accommodation to individuals with disabilities related to the provision of accessible rooms.

## THE ADA AND ACCESSIBLE TRANSIENT LODGING

9.      The ADA was signed into law by President George H.W. Bush more than thirty years ago with the intent to "provide a clear and comprehensive national mandate for

the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).

10.    When the ADA's implementing regulations were revised in 2010, a regulatory impact analysis found that "[s]ome of the most frequently cited qualitative benefits of increased access are the increase in one's personal sense of dignity that arises from increased access and the decrease in possibly humiliating incidents due to accessibility barriers. Struggling [to use a non-accessible facility] negatively affect[s] a person's sense of independence and can lead to humiliating accidents, derisive comments, or embarrassment. These humiliations, together with feelings of being stigmatized as different or inferior from being relegated to use other, less comfortable or pleasant elements of a facility . . . all have a negative impact on persons with disabilities." Final Regulatory Impact Analysis of the Final Revised Regulations Implementing Titles II and III of the ADA, Including Revised ADA Standards for Accessible Design, U.S. Dep't Just. (July 3, 2010), p. 138.[2]

11.    Title III of the ADA requires that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

---

[2] Available at https://www.ada.gov/law-and-regs/title-ii-2010-regulations/ (Last accessed July 18, 2023).

12.     Discrimination on the basis of disability can occur, generally, through a denial of the opportunity to participate in or benefit from goods, services, facilities, privileges, advantages, or accommodations (42 U.S.C. § 12182(b)(1)(A)(i)); from affording goods, services, facilities, privileges, advantages, or accommodations that are not equal to those afforded to other individuals (42 U.S.C. § 12182(b)(1)(A)(ii)); from providing goods, services, facilities, privileges, advantages, or accommodations that are separate from those provided to other individuals (42 U.S.C. § 12182(b)(1)(A)(iii)); or from utilizing methods of administration that have the effect of discriminating on the basis of a disability (42 U.S.C. § 12182(b)(1)(D)).

13.     The ADA and its implementing regulations also define prohibited discrimination to include the following: (i) the failure to remove architectural barriers when such removal is readily achievable for places of public accommodation that existed prior to January 26, 1992 (28 C.F.R. § 36.304(a) and 42 U.S.C. § 12182(b)(2)(A)(iv)); (ii) the failure to design and construct places of public accommodation for first occupancy after January 26, 1993, that are readily accessible to and usable by individuals with disabilities (28 C.F.R. § 36.401 and 42 U.S.C. § 12183(a)(1)); and (iii) for alterations to public accommodations made after January 26, 1992, the failure to make alterations so that the altered portions of the public accommodation are readily accessible to and usable by individuals with disabilities (28 C.F.R. § 36.402 and 42 U.S.C. § 12183(a)(2)).

14.     The Department of Justice, pursuant to 42 U.S.C. § 12186(b), has promulgated the ADA Accessibility Guidelines ("ADAAG") in implementing Title III of the ADA. There are two active ADAAGs that set forth the technical requirements that a

public accommodation must meet in order to be "readily accessible": the 1991 ADAAG

Standards, 28 C.F.R. § pt. 36, App. D ("1991 Standards"), and the 2010 ADAAG

Standards, 36 C.F.R. § pt. 1191, App. D ("2010 Standards").

15.    Both the 1991 Standards and the 2010 Standards require places of transient

lodging, such as hotels, to provide a certain number of accessible sleeping rooms and suites,

determined on a sliding scale based on the total number of guest rooms offered. 1991

Standards §§ 9.1.2-3; 2010 Standards §§ 224.2-4.

16.    The number of accessible guest rooms required is as follows:

| Total Number of Guest Rooms Provided | Minimum Number of Required Accessible Rooms Without Roll-in Showers | Minimum Number of Required Accessible Rooms with Roll-in Showers | Minimum Number of Required Rooms with Communication Features (2010 Standards) | Minimum Number of Required Rooms with Communication Features (1991 Standards) |
|---|---|---|---|---|
| 1 to 25 | 1 | 0 | 2[3] | 1 |
| 26 to 50 | 2 | 0 | 4 | 2 |
| 51 to 75 | 3 | 1 | 7 | 3 |
| 76 to 100 | 4 | 1 | 9 | 4 |
| 101 to 150 | 5 | 2 | 12 | 5 |
| 151 to 200 | 6 | 2 | 14 | 6 |
| 201 to 300 | 7 | 3 | 17 | 7 |
| 301 to 400 | 8 | 4 | 20 | 8 |
| 401 to 500 | 9 | 4 | 22 | 9 |
| 501 to 1000 | 2 percent of total | 1 percent of total | 5 percent of total | 2 percent of total |
| 1001 and over | 20, plus 1 for each 100, or fraction thereof, over 1000 | 10, plus 1 for each 100, or fraction thereof, over 1000 | 50, plus 3 for each 100 over 1000 | 20, plus 1 for each 100 over 1000 |

3

17.     In addition to requiring the provision of accessible rooms, the ADA requires hotels to offer accessible guest rooms with an equivalent range of options and amenities that are offered in guest rooms available to individuals without disabilities.

18.     The 1991 Standards require accessible rooms to "be dispersed among the various classes of sleeping accommodations available to patrons of the place of transient lodging. Factors to be considered include room size, cost, amenities provided, and the number of beds provided." 1991 Standards § 9.1.4(1).

19.     The 2010 Standards are substantially similar and require that accessible rooms "shall be dispersed among the various classes of guest rooms, and shall provide choices of types of guest rooms, number of beds, and other amenities comparable to the choices provided to other guests. Where the minimum number of guest rooms required to comply with Section 806 of the 2010 Standards is not sufficient to allow for complete dispersion, guest rooms shall be dispersed in the following priority: guest room type, number of beds, and amenities. At least one guest room required to provide mobility features with 806.2 shall also provide communication features complying with 806.3. Not more than 10 percent of guest rooms required to provide mobility features complying with 806.2 shall be used to satisfy the minimum number of guest rooms required to provide communication features complying with 806.3." 2010 Standards § 224.5.

---

3 The 2010 Standards uses a range of Total Number of Guest Rooms Provided of "2 to 25" for communications features, versus the 1991 Standards' "1-25".

20.     The Advisory to Section 224.5 states that "[f]actors to be considered in providing an equivalent range of options may include, but are not limited to, room size, bed size, cost, view, bathroom fixtures such as hot tubs and spas, smoking and nonsmoking, and the number of rooms provided."

21.     The Department of Justice explained in its Guidance on the 2010 Standards that the "dispersion requirement is intended to effectuate Congress' directive that a percentage of each class of hotel rooms is to be fully accessible to persons with disabilities. *See* H.R. Rep. No. 101- 485 (II) at 391. Accordingly, the promise of the ADA in this instance is that persons with disabilities will have an equal opportunity to benefit from the various options available to hotel guests without disabilities, from single occupancy guest rooms with limited features (and accompanying limited price tags) to luxury suites with lavish features and choices."

22.     The ADA requires reasonable modifications in policies, practices, or procedures when necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities unless the public accommodation can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii). In addition, the law imposes specific operational policy, practice and procedural requirements on Defendant (see e.g. 28 CFR 36.302); see also U.S. Department of Justice Civil Rights Division ADA Checklist for New Lodging Facilities.

23.     The remedies and procedures set forth at 42 U.S.C. § 2000a-3(a) are provided to any person who is being subjected to discrimination on the basis of disability or who has

reasonable grounds for believing that such person is about to be subjected to discrimination in violation of 42 U.S.C. § 12183. 42 U.S.C. 12188(a)(1).

24.     Aside from the 1991 and 2010 Standards, "[w]here the Department has not issued specific design or technical standards, public accommodations' actions are governed by the ADA's general nondiscrimination requirements and the ADA's overarching equal access mandate. These requirements include the obligation to make reasonable modifications where necessary to provide people with disabilities access to the public accommodation's goods and services."[4]

25.     Consistent with the regulatory guidance discussed above, Defendant must not only offer accessible guest rooms that include accessible beds, but Defendant must also offer rooms with accessible beds, at an accessible height, which are dispersed among all of its room categories.

## JURISDICTION AND VENUE

26.     The claims alleged arise under Title III such that this Court's jurisdiction is invoked pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

---

[4] See Statement of Interest of the United States of America, *Migyanko v. Aimbridge Hospitality, LLC*, 2:20-cv-10195 (ECF 57). The Statement of Interest contains a thorough discussion of how the United States views Defendant's obligation to provide accessible beds. See also *Mullen v. Concord Hosp. Enterprises Co.*, LLC, No. 2:20-CV01530-RJC, 2022 WL 295880 (W.D. Pa. Feb. 1, 2022); *Migyanko v. Aimbridge Hosp.*, LLC, No. 2:20-CV-1095-NR, 2022 WL 345058 (W.D. Pa. Feb. 4, 2022); *Eyler v. Garrison Pittsburgh Monroeville Opco LLC*, No. CV 21-1058, 2022 WL 1032732 (W.D. Pa. Apr. 6, 2022); and *Eyler v. Liza Luv Invs. III LLC*, No. 2:21-CV-01050-CRE, 2022 WL 2829823 (W.D. Pa. July 20, 2022).

27.     Personal jurisdiction exists because Defendant owns, manages, and/or operates a hotel located in Hennepin County, Minnesota.

28. Venue in this District is proper under 28 U.S.C. § 1391(b)(2) because this is the judicial district in which a substantial part of the acts and omissions giving rise to Plaintiff's claims occurred.

## PARTIES

29.     Plaintiff, at all times relevant hereto, is and was a resident of the State of Minnesota.

30.     Plaintiff is a wheelchair user who is limited in the major life activity of walking and is a member of the protected class under the ADA.

31.     Defendant is a Minnesota Corporation doing business at 2261 Killebrew Drive, Bloomington, MN.

## FACTUAL ALLEGATIONS

32.     Defendant owns, manages, and/or operates the Facility.

33.     As a fundamental part of its ownership and/or operation of the Facility, Defendant provides hotel rooms with sleeping beds to its customers. However, the "accessible" rooms are not accessible to individuals with mobility disabilities who are dependent upon wheelchairs or scooters for reasons including, but not necessarily limited to, the following: the top surface of the beds in Defendant's Facility's allegedly accessible rooms are 25 inches above the floor.

**Plaintiff Gary Scherer**

34.     Plaintiff Gary Scherer suffers from a form of ataxia that significantly impairs his mobility and thus is dependent on a wheelchair for mobility.  Plaintiff suffers from, and all times relevant hereto has suffered from, a legal disability as defined by the ADA, 42 U.S.C. § 12102(2). He is therefore a member of the protected class under the ADA and the regulations implementing the ADA set forth at 28 C.F.R. § 36.101, *et seq*.

35. Plaintiff has an acute understanding of the discrimination people with disabilities regularly encounter when businesses ignore the ADA – and the humiliation, embarrassment, stigma, physical discomfort, stress, strain, fatigue and isolation from friends and family that results. Plaintiff is also well-aware of the benefits for the disabled when responsible business owners take the ADA's requirements seriously.

36.     Plaintiff resides in Minnesota and travels within the state and elsewhere. When travelling, Plaintiff stays in hotels from time to time.

37.     In Plaintiff's experience, the ability to access a roll-in shower is important for him to be able to independently and safely bathe himself. He has also found that beds in the "accessible" rooms in hotels are also frequently too high to permit him to independently and safely transfer from his wheelchair to the surface of the bed.

38.     Plaintiff desires to patronize accessible hotels in the area in which Defendant's hotel is located.

39.     In 2024, Plaintiff communicated with front desk personnel at the Facility and inquired about the height of the top surfaces of the beds in purportedly accessible

rooms. He was told that the top surface of the beds in the accessible rooms was 25 inches above the floor.

40.     Upon information and belief, the Facility has ADA violations relating to the lack of accessible seating in the dining area, as well as impermissible reach range issues in the pantry and dining areas.

41.     The seat height for Plaintiff's wheelchair is approximately 18 inches from the ground, and the average height of wheelchair seats generally is 18-20 inches.

42.     A high sleeping surface of a bed in Defendant's purportedly accessible room would render it difficult if not impossible for Plaintiff to independently and safely transfer from his wheelchair to the bed.

43.     Plaintiff can safely and independently transfer to horizontal surfaces that are approximately the same height as his wheelchair seat, such as dining chairs, toilet seats, and benches.

44.     Transferring to horizontal surfaces that are significantly higher than his wheelchair seat is difficult and dangerous for Plaintiff; he must hoist his body weight up to the height of the higher surface using primarily upper body strength or be helped by someone else.

45.     Plaintiff risks injury due to falling or straining his shoulders when transferring to higher horizontal surfaces, or when attempting to bathe himself in hotel rooms that do not have a roll-in shower.

46.     Defendants' policies, practices, and procedures of not providing individuals with disabilities hotel rooms with accessible beds are discriminatory and in violation of the ADA.

47.     Plaintiff would like to stay at the Facility in the future with the ability to safely and independently use the hotel's purportedly accessible rooms.

48.     However, the lack of accessible features in the accessible rooms has prevented and continues to prevent Plaintiff from doing so safely and independently.

49.     The law does not require that Plaintiff actually visit the property and subject himself to the risk of injury as a result of Defendant's inaccessible Facility.

50.     Plaintiff has been, and in the absence of an injunction will continue to be, injured by Defendant's policies, practices, and procedures of failing to provide an accessible facility to persons with disabilities.

## **CAUSE OF ACTION**

### **For Violations of 42 U.S.C. §§ 12181, *et seq.***

51.     Plaintiff incorporates by reference each and every allegation herein.

52.     Plaintiff is an individual with a disability under the ADA. 42 U.S.C. § 12102(1)(A).

53.     Defendant provides public accommodations under the ADA. 42 U.S.C. § 12181(7).

54.     Title III of the ADA prohibits discrimination against individuals with disabilities in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation. 42 U.S.C. § 12182(a).

55.     Defendant owns, manages, and/or operates a hotel, or "place of lodging," that is a place of public accommodation under Title III of the ADA. 42 U.S.C. § 12181(7).

56.     Defendant has engaged in illegal disability discrimination for reasons including, but not necessarily limited to, the fact that the Facility does not have enough accessible rooms and does not have enough accessible rooms with a roll-in shower in violation of 1991 Standards §§ 9.1.2-3; 2010 Standards §§ 224.2-4.

57.     Defendant has engaged, directly, or through contractual, licensing, or other arrangements, in illegal disability discrimination, as defined by Title III, including without limitation: a) denying individuals with mobility disabilities opportunities to participate in and benefit from the goods, services and facilities available at the Facility; b) affording individuals with mobility disabilities unequal access to goods, services, or facilities; c) utilizing methods of administration that (i) have the effect of discriminating on the basis of disability; or (ii) perpetuating the discrimination of others who are subject to common administrative control; and d) failing to make reasonable modifications in policies, practices, or procedures where necessary to afford services, privileges, advantages, or accommodations to individuals with mobility disabilities.

14

58.     Defendant's ongoing and continuing violations of Title III have caused, and in the absence of an injunction will continue to cause, harm to the Plaintiff.

59.     Pursuant to 42 U.S.C. § 12188 and the remedies, procedures and rights set forth and incorporated therein, Plaintiff requests relief as set forth below.

**WHEREFORE**, Plaintiff respectfully requests judgment as follows:

a.     A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendant failed to take action reasonably calculated to ensure that all accessible features in Defendant's Facility that are related to Plaintiff's disability were fully accessible to, and independently usable by, individuals with mobility disabilities;

b.     A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504(a), which directs Defendant to take all steps necessary to bring all accessible features, policies, procedures and practices in Defendant's Facility that are related to Plaintiff's disability  into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that the Facility is and remains fully accessible to, and independently usable by, individuals with mobility disabilities, and which further directs that the Court shall retain jurisdiction for a period to be determined to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law;

15

  
c.      Payment of nominal damages, as permitted by the Supreme Court in

*Uzuegbunam v. Preczewski*, 141 S. Ct., 792, 799-802 (2021) ("They [nominal damages]

are instead the damages awarded by default until the plaintiff establishes entitlement to

some other form of damages, such as compensatory or statutory.");

d.      Payment of costs and reasonable attorneys' fees as provided for by law; and

e.      Such other additional or alternative relief as the Court finds just and proper.

Dated: February 15, 2024                    **THRONDSET MICHENFELDER, LLC**

By: /s/Chad A. Throndset
Chad A. Throndset (#0261191)
Patrick W. Michenfelder (#024207X)
Jason D. Gustafson (#0403297)
222 South Ninth Street, Suite 1600
Minneapolis, MN 55402
Tel: (763) 515-6110
Fax: (763) 226-2515
Email: chad@throndsetlaw.com
Email: pat@throndsetlaw.com
Email: jason@throndsetlaw.com
*Attorneys for Plaintiff*


        The undersigned hereby acknowledges that costs, disbursement, and reasonable
attorney fees may be awarded to the opposing party or parties pursuant to Minn. Stat. §
549.221.


                                /s/Chad A. Throndset
                                 Chad A. Throndset (#0261191)